1  Alan R. Golden, Esq.    State Bar No. 034994
   **LAW OFFICES OF ALAN R. GOLDEN**
2  6303 Owensmouth Avenue, 10th Floor
   Woodland Hills, California 91367
3  Telephone: (818) 784-1224
   Facsimile: (818) 936-3011
4  E-mail: alangolden@earthlink.net

5  Attorney for plaintiff Kapa Investment

6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11 **KAPA INVESTMENT, a California**          ) CASE NO. CV 08-8446 PSG (JCx)
   **corporation,**                           )
12                                            ) NOTICE OF MOTION AND
                                              ) PLAINTIFF'S MOTION IN LIMINE
13                                            ) NO. 1 TO PRECLUDE EVIDENCE
                        Plaintiff,            ) OR MENTION OF STATEMENTS
14                                            ) BY OR PRIOR TESTIMONY OF
                                              ) KAMBIZ PAHLAVAN RE: USE
15            vs.                             ) OF THE SUBJECT AIRCRAFT;
                                              ) MEMORANDUM OF POINTS AND
16 **CIRRUS DESIGN CORPORATION; TELEDYNE**    ) AUTHORITIES; DECLARATION
   **CONTINENTAL MOTORS; GARMIN**             ) OF ALAN R. GOLDEN
17 **INTERNATIONAL; L-3 COMMUNICATIONS**      )
   **AVIONICS; STEC, INC.; AVIDYNE**          ) HEARING DATE: 10/27/09, 9:00 A.M.
18 **CORPORATION; and DOES 1 through 20,**    ) FINAL PRE-TRIAL CONF.: 10/19/09
   **inclusive,**                             ) JURY TRIAL:  10/27/09
19                                            ) TIME:  9:00 A.M.
                        Defendants.           ) COURTROOM 790 - ROYBAL
20 _____  )

21

22       This motion is made following the conference of counsel pursuant to L.R. 7-3 which took

23 place on September 4, 2009.

24       **PLEASE TAKE NOTICE** that on October 27, 2009 at 9:00 a.m., or on such other date or

25 time as the court may hereafter set, in Courtroom 790 of the above court, plaintiff Kapa Investment

26 will move for orders (1) excluding any evidence, mention or argument relating to a statement in an

27 e-mail described below, and/or to deposition testimony, by Kambiz Pahlavan regarding the

28 personal or business use of the 2005 Cirrus Design SR22-GTS single engine airplane that is the

                                      - 1 -
_____

1  subject of this action, and (2) redacting from each place such a reference appears in said e-mail,

2  from the deposition testimony of Mr. Pahlavan taken in this action, and from any other place

3  where such a reference may appear.

4      The subject evidence is irrelevant, immaterial, prejudicial under Rules 403, 404(a)(3), (b),

5  and 608 of the *Federal Rules of Evidence*.

6

7                                          **I**

8                          **BACKGROUND FOR THE MOTION**

9      This is a suit for damages under the Magnuson-Moss Warranty Act (MMWA) by plaintiff

10  Kapa Investment (Kapa), a California corporation whose sole shareholder, director and president

11  is Kambiz Pahlavan.  The allegedly defective product involved is a 2005 Cirrus Design SR22-

12  GTS single engine airplane (the Aircraft).

13      The defendants are Cirrus Design Corporation (Cirrus), the manufacturer of the Aircraft;

14  and Teledyne Continental Motors, Inc. (TCM), the manufacturer of its engine.[1]

15      It is undisputed that on January 14, 2008, Mr. Pahlavan sent an e-mail to Darrell Yelton of

16  Cirrus in which he complained about the length of time the Aircraft was out of service due to

17  warranty repairs.  A copy of that two page e-mail is attached hereto as Exhibit "1" and is

18  incorporated by reference.

19      In the second sentence, last paragraph, first page of the e-mail, Mr. Pahlavan stated:

20      "I fly the plane for business regularly and I already have changed a bunch of my schedule
        juggling things and pushing it back to after 1/20/07 thinking that I would have the plane by
21      end of this week as it was scheduled before."

22      Attached hereto as Exhibit "2" and incorporated by reference are copies of pages 112

23  through 119 of the deposition of Kambiz Pahlavan taken on May 18, 2009.  Mr. Pahlavan was

24  questioned by counsel for former defendant Garmin International, Inc. whether all his e-mail

25

26      [1]Defendant Garmin has obtained summary judgment and Kapa is in the process of
    finalizing settlements with defendants L-3, S-TEC and Avidyne.  The only things remaining to be
27  done are to agree upon the form of the settlement agreement / release with S-TEC and to apply to
    the court for a dismissal of those defendants upon completion of the settlement.  Plaintiff believes
28  this will be accomplished very soon and that those defendants will not be before the court when
    this motion is heard.  Therefore, those defendants will not be mentioned further in this motion.

**PLAINTIFF'S MOTION IN LIMINE NO. 1 TO PRECLUDE EVIDENCE OR MENTION OF STATEMENTS
BY OR PRIOR TESTIMONY OF KAMBIZ PAHLAVAN RE: USE OF THE SUBJECT AIRCRAFT; [ETC.]**

1  statements were true.  Mr. Pahlavan responded,

2      "and I'm not sure even if it is in these e-mails or not, but at one point I told Cirrus that in
       order for them to get them a sense of urgency, I told them I need the plane, and I flew the
3      plane for business, I – you know, so on and so forth."[3]   He then answered "yes," when
       asked if that statement was "inaccurate."[4]
4

5  He also answered that "I guess you could put it that way" when asked whether "you lied to Cirrus

6  in making this statement so that they would have this sense of urgency in repairing your plane?"[5]

7

8                                              II

9      THIS EVIDENCE IS INADMISSIBLE BECAUSE (a) IT IS NOT MATERIAL TO

10     THE ISSUES IN THIS MATTER AND (b) IT IS AN ATTEMPT TO IMPEACH

11                   BASED UPON OTHER "WRONGS" OR "ACTS"

12     a.      How a Particular Buyer Uses the Product is Immaterial to Any Issue under the

13  MMWA, Including Whether a Claimant Has "Consumer" Status.

14         If the use to which a particular buyer put the goods were material, then the statements by

15  Mr. Pahlavan also could be material.  However, a consumer's particular use of the product in

16  question is immaterial under the MMWA.

17     "The Magnuson-Moss Act was adopted to make warranties on consumer products more
       readily understood and enforceable and to provide the Federal Trade Commission with
18     means of better protecting consumers.  (Citation omitted.)  The Act defines 'consumer
       products' as 'any personal property ... which is normally used for personal, family or
19     household purposes ...' 15 U.S.C. 2301(1).  The implementing regulations explain that
       this definition encompasses *all products commonly used* for consumer purposes,
20     *regardless of their actual use by the individual purchaser.*  See C.F.R. § 700.1(a).
       Products commonly used for *both* personal and commercial purposes *are deemed*
21     *consumer products, and any  ambiguities in the definition are resolved in favor of*
       *coverage*" (emphasis added).  *Kwiatkowski v. Volvo Trucks North America* 500 F. Supp.
22     2d 875, 876 (N.D. Ill., 2007).

23  C.F.R. §700.1(a) contains additional language pertinent to Kapa's contention:

24     "This means that a product is a 'consumer product' if the use of that type of product is *not*
       *uncommon.  The percentage of sales or the use to which a product is put by any individual*
25

26     [3]Pg. 113, lns. 19-24.

27     [4]Pg. 114, lns. 3-5.

28     [5]Pg. 114, lns. 21-24.

                                            - 3 -
_____

1    *buyer is not determinative.* For example, products such as automobiles and typewriters
     which are used for both personal and commercial purposes come within the definition of
2    consumer product." (emphasis added).

3       In *Business Modeling Techniques, Inc. v. General Motors Corporation*, 474 N.Y.S.2d 258,

4    260, 261 (1984), the court held consistently that an automobile purchased by a corporation

5    qualifies as a consumer product under the Act even though the plaintiff had "admitted at an

6    examination before trial that the automobile was used mainly for business purposes."

7       Similarly, in *Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F.Supp.2d

8    1028, 1033 (USDC, D. Hawaii, 2006), a corporation that purchased a Lamborghini automobile

9    was a "consumer" under the MMWA because

10       "there is no statutory directive to examine the status of the owner to determine how a
         product is normally used," and "[t]hus the particular use to which a plaintiff puts the
11       product is not determinative; it is the type of product that matters."

12      Accordingly, Kapa need not prove how the Aircraft actually was used. Rather - as was

13   briefed in detail during the two summary judgment proceedings in this matter - the only issue is

14   how a single engine airplane of this sort "normally" is used, that is, whether it is "not uncommon"

15   for the product category to be used for personal purposes. Therefore, whether or not Kapa or Mr.

16   Pahlavan regularly needed, or used, the Aircraft for business purposes is immaterial.

17      For those reasons, unless the court were to disagree and rule that Kapa's use of the Aircraft

18   is material, *Kapa will not introduce evidence as to its use of the Aircraft.*[6]

19

20      **b.    A Witness's Character or Believability May Not be Impeached by Proof of**

21   **Prior "Acts."**

22      Any protestations to the contrary notwithstanding, the defendants want to present Mr.

23   Pahlavan's out of court e-mail statement, and his above-described deposition testimony, to the jury

24   to try to impeach his in court testimony *even if Kapa introduces no evidence as to the personal or*

25   *business use of the Aircraft.* Clearly, this would allow them to argue that his testimony in court

26   should not be "trusted." The law does not permit such evidence.

27   _____

28      [6]The evidence simply will be that the Aircraft always has been flown by Mr. Pahlavan and
     may show the places to which he flew (the pilot's log book shows this as well).

- 4 -

Rule 404 of the *Federal Rules of Evidence* states that in a civil case,[7]

"(a)  Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: ....... [inapplicable] (3)  Evidence of the character of a witness, as provided in rules 607 [criminal cases], 608, and 609 [criminal cases].

(b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ..... [inapplicable]."

The prior acts exceptions listed in sub-part (b) of Rule 404 are inapplicable to the "use" statement involved here.  Nothing in that statement or its later contradiction tends to prove or disprove any portion of Kapa's actual case.  Rather, it simply shows that Kambiz Pahlavan made an out of court misstatement with regard to something that is *not* an issue in this case.  It simply is a prior "act" that cannot be used to impeach his character or to prove anything else material to the issues in this matter.

Part (a) of Rule 608 states similarly that witness credibility may be attacked *only* by "evidence in the form of opinion or reputation" as to the witness's "character for truthfulness or untruthfulness."  As mentioned above, the "use" statement does not provide "opinion" or "reputation" information about Mr. Pahlavan's character for truthfulness.

Part (b) of Rule 608 states that

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence."

An exception to that blanket prohibition against evidence of specific instances of conduct, called "impeachment by contradiction," allows extrinsic evidence in certain limited situations, i.e.,

"impeachment by contradiction 'permits courts to admit extrinsic evidence that specific *testimony* is false, because contradicted by other evidence" (emphasis added). Impeachment by contradiction is an *exception* to the collateral fact rule embodied in Federal Rule of Evidence 608(b), which *generally prohibits the introduction of extrinsic evidence to attack the credibility of a witness*" (emphasis added).  *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir., 2009).

Consistently, in *United States v. Green*, 648 F.2d 587 (9th. Cir., 1981), defendants'

---

[7]Exceptions in sub-parts (1) and (2) of the Rule that are related to criminal matters only are omitted here.

1  convictions were reversed because the trial court had permitted the prosecutor to cross-examine

2  about prior misconduct and contraband seized from the defendants' home.  As in the instant case,

3  the elicited testimony had nothing to do with the issues in the case and the subject had not been

4  brought up by the defendants (648 F.2d 590).  The Ninth Circuit applied Rule 608(b) (648 F.2d

5  596), noting in footnote 12 that the evidence should not have been admitted because "the

6  statements were given in direct response to specific questions asked on cross-examination."

7       Here, any inquiry about Mr. Pahlavan's e-mail or later deposition testimony would come

8  from the defendants.  The "use" claim does not deal with any issue in this case and would be a

9  disallowed attempt by the defendants to attack Mr. Pahlavan's credibility solely by way of

10 extrinsic evidence.

11      Even the "impeachment by contradiction" *exception* to Rule 608's general prohibition

12 against extrinsic evidence

13     "comes with its own important limitation.  In general, a witness may be impeached by
   contradiction only if 'the statements in issue [have] been volunteered on direct

14     examination'."  *United States v. Kincaid-Chauncey*, supra, @556 F.3d 932.

15 That is because the purpose of the exception is "rooting out perjury," not "to trap an unwary

16 witness into 'volunteering' statements on cross-examination" (556 F.3d 933).[8]

17      Last, this evidence should be excluded because "its probative value is substantially

18 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

19 *Federal Rules of Evidence*, Rule 403.

20

21 **DATED:**  September 10, 2009.

22                           **Respectfully submitted,**

23                           **LAW OFFICES OF ALAN R. GOLDEN**

24

25                     By

26                       **Alan R. Golden**
                         Attorney for plaintiff Kapa Investment

27 _____

28     [8]That is precisely how this information first was placed into controversy in this case - upon
   cross-examination of Mr. Pahlavan at a deposition.

PLAINTIFF'S MOTION IN LIMINE NO. 1 TO PRECLUDE EVIDENCE OR MENTION OF STATEMENTS
BY OR PRIOR TESTIMONY OF KAMBIZ PAHLAVAN RE: USE OF THE SUBJECT AIRCRAFT; [ETC.]

**DECLARATION OF ALAN R. GOLDEN IN SUPPORT OF IN LIMINE MOTION**

     I, Alan R. Golden, declare:

     1.    I am an attorney at law licensed to practice before this honorable court and all courts of the state of California.  I am counsel of record for plaintiff Kapa Investment in the within action.  The facts stated herein are true of my own personal knowledge.

     2.    The undisputed evidence in this matter shows that on January 14, 2008, Kambiz Pahlavan, the sole shareholder, director and president of plaintiff Kapa Investment, sent an e-mail to Darrell Yelton of defendant Cirrus Design Corporation.  In that e-mail he complained about the length of time the 2005 Cirrus Design airplane that is the subject of this action was out of service due to warranty repairs.  A copy of that two page e-mail is attached hereto as Exhibit "1" and is incorporated by reference.

     3.    In the second sentence of the last paragraph on the first page of the e-mail, Mr. Pahlavan stated:

> "I fly the plane for business regularly and I already have changed a bunch of my schedule juggling things and pushing it back to after 1/20/07 thinking that I would have the plane by end of this week as it was scheduled before."

     4.    Attached hereto as Exhibit "2" and incorporated by reference are copies of the cover page and pages 112 through 119 of the deposition of Kambiz Pahlavan taken on May 18, 2009.  Mr. Pahlavan was questioned by counsel for former defendant Garmin International, Inc. about whether all his e-mail statements involving the Aircraft were "true and accurate."  As pertinent, Mr. Pahlavan responded,

> "and I'm not sure even if it is in these e-mails or not, but at one point I told Cirrus that in order for them to get them a sense of urgency, I told them I need the plane, and I flew the plane for business, I – you know, so on and so forth."   He then answered "yes," when asked if that statement was "inaccurate."

He also answered that "I guess you could put it that way" when asked whether "you lied to Cirrus in making this statement so that they would have this sense of urgency in repairing your plane?"

1     5.     On September 4, 2009, pursuant to Local Rule 7-3, I met personally with Peter

2 Cook and Will Skinner, counsel for defendants Cirrus Design Corporation and Teledyne

3 Continental Motors, Inc., respectively.  At that time, I told them in substance that I would be

4 bringing this in limine motion on behalf of my client and that the requested relief would be for an

5 order excluding any reference or testimony relating to the e-mail statement and deposition

6 testimony of Kambiz Pahlavan described in paragraphs 2, 3 and 4 of this declaration, redacting the

7 reference to "use" from that e-mail and from the deposition testimony where such reference or

8 testimony appears, and redacting such a reference from any other place where such a reference

9 may appear.  I also told them that my client's position is that the subject matter is irrelevant,

10 immaterial and unduly prejudicial.

11     6.     Both Mr. Cook and Mr. Skinner stated, in substance, that they would attempt

12 to introduce such references and testimony at the trial, and that they would oppose a motion such

13 as the subject motion.

14     7.     I did not attempt to discuss this motion with counsel for defendants L-3, S-TEC or

15 Avidyne because plaintiff has reached a settlement with them all and they are likely to have been

16 dismissed from this case by the time this motion is ruled upon.  However, I have served their

17 counsel with copies of these moving papers.

18 I declare under penalty of perjury that the foregoing is true and correct and that this

19 declaration was executed on September 10, 2009 at Woodland Hills, California.

Alan R. Golden

- 8 -