1 | Will S. Skinner (SBN 206031)
2 | DEFOREST KOSCELNIK YOKITIS KAPLAN &
BERARDINELLI
3 | 6303 Owensmouth Avenue, 10th Floor
Woodland Hills, CA 91367
Telephone: (818) 936-3305
4 | Facsimile: (818) 936-3091
Email: skinner@dkykb.com
5 |
Attorneys for Defendant
6 | TELEDYNE CONTINENTAL MOTORS, INC.
7 |
8 | **UNITED STATES DISTRICT COURT**
9 | **CENTRAL DISTRICT OF CALIFORNIA**
10 |
11 | KAPA INVESTMENT, a California corporation,

12 |                   Plaintiff,

13 |     v.

14 | CIRRUS DESIGN
15 | CORPORATION; TELEDYNE
CONTINENTAL MOTORS;
16 | GARMIN INTERNATIONAL; L-3
COMMUNICATIONS AVIONICS;
17 | STEC, INC.; and DOES 1 through
20, inclusive,
18 |
            Defendants.
19 |
20 |
21 |
22 |
23 |

Case No.: CV08-8446 PSG (JCx)

**NOTICE OF MOTION AND MOTION IN LIMINE BY TELEDYNE CONTINENTAL MOTORS, INC. TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY UNDER RULE 702 AND *DAUBERT*; MEMORANDUM OF POINTS AND AUTHORITIES**

**[Declaration of Will S. Skinner filed concurrently herewith]**

Date:     October 27, 2009
Time:    9:00 a.m.
Place:   Courtroom 790 – Roybal

Final Pre-Trial
Conference:   October 19, 2009
Trial:       October 27, 2009

24 |
25 |      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
26 |      PLEASE TAKE NOTICE that on October 27, 2009, at 9:00 a.m., or as soon
27 | thereafter as counsel may be heard in the above-entitled Court, located at 255 East
28 | Temple Street, Los Angeles, California 90012, Defendant Teledyne Continental

DeForest Koscelnick
Yokitis Kaplan &
Berardinelli
Attorneys At Law

1    Motors, Inc. ("TCM") will move the Court for an order excluding the opinion

2    testimony of Plaintiff's expert witness John E. Gallagher pursuant to Federal Rule

3    of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

4    (1993). TCM requests that the Court exclude the following:

5        (1)    All opinion testimony from Plaintiff's expert on exhaust gas

6    temperatures and oil consumption because these opinions are based solely on what

7    Kambiz Pahlavan, President of Kapa Investment, told the expert;

8        (2)    All opinion testimony from Plaintiff's expert not based on scientific or

9    technical evidence or data;

10       (3)    All opinion testimony from Plaintiff's expert on the engine running hot

11   because Plaintiff's expert admits he has not investigated this claim and cannot

12   express an opinion on it; and

13       (4)    All opinion testimony from Plaintiff's expert that was not specified in

14   his expert report, including any testimony pertaining to damages.

15       This motion will be based on this Notice of Motion and Motion,

16   Memorandum of Points and Authorities, Declaration of Will S. Skinner, all the

17   papers, pleadings and records on file, and any oral and documentary evidence that

18   may be presented at the hearing on this motion. This motion is made following the

19   conference of counsel pursuant to L.R. 7-3 which took place on September 4, 2009.

20   Dated: September 24, 2009

                          DEFOREST KOSCELNIK YOKITIS
21                        KAPLAN & BERARDINELLI

22

23

24                        By:_____

25                                Will S. Skinner

26                        Attorneys for Defendant
                          TELEDYNE CONTINENTAL
27                        MOTORS, INC.

28

1

**TABLE OF CONTENTS**

2

I.   INTRODUCTION ..................................................................................1

3

II.  LEGAL STANDARDS .........................................................................2

4

III. PROPOSED TESTIMONY BY PLAINTIFF'S EXPERT .................3

5

IV. ARGUMENT .......................................................................................6

6

    A.   The Court Should Exclude All Opinion Testimony From Plaintiff's Expert On Exhaust Gas Temperatures And Oil Consumption Because These Opinions Are Based Solely On What Kamibiz Pahlavan Told Plaintiff's Expert ..................................................................................................6

7

8

9

    B.   The Court Should Exclude All Opinion Testimony From Plaintiff's Expert Not Based On Scientific or Technical Evidence Or Data.............................9

10

    C.   The Court Should Exclude All Opinion Testimony From Plaintiff's Expert On The Engine Running Hot Because Plaintiff's Expert Admits He Has Not Investigated This Claim And Cannot Express An Opinion On It.................10

11

12

    D.   The Court Should Exclude All Opinion Testimony From Plaintiff's Expert That Was Not Specified In His Expert Report, Including Any Testimony Pertaining To Damages...................................................................................12

13

14

15

V.  CONCLUSION ....................................................................................14

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

3

*7-Up Bottling Co. of Jasper Inc. v. Archer Daniels Midland Co.*

4
    *(In Re Citric Acid Litig.),*

5
    191 F.3d 1090 (9th Cir. 1999) ……………………………………7

6

*Crowley v. Chait,*

7
    322 F. Supp. 2d 530 (D.N.J. 2004) ……………………………..14

8

*Daubert v. Merrell Dow Pharms., Inc.,*

9
    509 U.S. 579 (1993) ………………………………………2, 3, 8, 13

10

*Dos Amigos Distribs., Inc. v. Cadbury Bebidas, S.A. de C.V.,*

11
    No. 05-151, 2008 WL 3844062 (S.D. Cal. Aug. 14, 2008) ……………11

12

*General Electric Co. v. Joiner,*

13
    522 U.S. 136 (1997) ………………………………………………13

14

*Hall v. CIA,*

15
    538 F. Supp. 2d 64 (D.D.C. 2008) ……………………………… 8

16

*In re James Wilson Assocs.,*

17
    965 F.2d 160 (7th Cir. 1992) ……………………………………10

18

*Knight v. Kirby Inland Marine Inc.,*

19
    482 F.3d 347 (5th Cir. 2007) ……………………………………..6

20

*Kumho Tire Co. v. Carmichael,*

21
    526 U.S. 137 (1999) ……………………………………….. 3

22

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,*

23
    387 F. Supp. 2d 794 (N.D. Ill. 2005) …………………………… 7

24

*Lyman v. St. Jude Med. S.C., Inc.,*

25
    580 F. Supp. 2d 719 (E.D. Wis. 2008) ………………………….14

26

*Montgomery County v. Microvote Corp.,*

27
    320 F.3d 440 (3d Cir. 2003) ……………………………………14

28

*Mukhtar v. Cal. State Univ.,*
    299 F.3d 1053 (9th Cir. 2002) ………………………………… 3, 8, 9

*Salgado ex rel. Salgado v. General Motors Corp.,*
    150 F.3d 735 (7th Cir. 1998) …………………………………12

*Sierra Club v. Cedar Point Oil Co.,*
    73 F.3d 546 (5th Cir. 1996) ………………………………...12

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,*
    47 F.3d 277 (8th Cir. 1995) ……………………………….. 11

*Torres v. Johnson Lines,*
    932 F.2d 748 (9th Cir. 1991) ……………………………… 10

*United States v. 87.98 Acres of Land,*
    530 F.3d 899 (9th Cir. 2008) ……………………………...3

*United States v. Hall,*
    969 F.2d 1102 (D.C. Cir. 1992) ……………………………..6

*United States v. Hanna,*
    293 F.3d 1080 (9th Cir. 2002) …………………………………3

*United States v. Mejia,*
    545 F.3d 179 (2nd Cir. 2008) ……………………………… 7

*United States v. Morales,*
    108 F.3d 1031 (9th Cir. 1997) …………………………………3

*United States v. Rahm,*
    993 F.2d 1405 (9th Cir. 1993) …………………………...… 3, 8

*United States v. Scrima,*
    819 F.2d 996 (11th Cir. 1987) ……………………………… 7

*United States v. Vallejo,*
    237 F.3d 1008 (9th Cir. 2001),
    *amended by* 246 F.3d 1150 (9th Cir. 2001)……………………………… 3, 8

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.,*
    299 F. Supp. 2d 400 (D.N.J. 2003) …………………………………….... 13

*Watkins v. Telsmith, Inc.,*
    121 F.3d 984 (5th Cir. 1997) …………………………………………….. 14

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001) …………………………………………… 11

**Statutes**

Fed. R. Civ. P. 26   ………………………………………………......1, 11, 12
Fed. R. Civ. P. 37   ……………………………………………….…….. 11
Fed. R. Evid. 602   ……………………………………………………… 8
Fed. R. Evid. 701   ……………………………………………………… 8
Fed. R. Evid. 702   ……………………………………………… 2, 3, 7, 8, 9
Fed. R. Evid. 703   ………………………………………………..2, 3, 7, 9
Fed. R. Evid. 801   …………………………………………………....6
Fed. R. Evid. 802   ………………………………………………..…6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Kapa Investment, a California corporation, alleges that it purchased a used 2005 Cirrus Design SR22-GTS from Agresti Aviation LLC on or about November 15, 2006.  *See* Complaint, para. 6.  Since the purchase, Kapa Investment alleges that the aircraft has experienced severe, continuing and recurring defects and nonconformities in the aircraft, including excess oil consumption, engine "blow by," failure of the GPS display, failure of the autopilot system, failure of the traffic alert system, defects in the anchoring of the pilot's seat, failures of the interior door panels, unpredictable power supply percentages, engine overheating, and other defects and malfunctions.[1]  *See* Complaint, para. 10.  The aircraft has a TCM IO550N27B engine (S/N 917516).

Plaintiff designated John E. Gallagher as its sole expert witness to testify at trial in this case.  *See* Declaration of Will S. Skinner ("Skinner decl."), para. 3, Exhibit A ("Gallagher Report").  Mr. Gallagher did not disclose a rebuttal report as required by Rule 26(a)(2), nor did he supplement any of the opinions contained in his July 29, 2009 report.

TCM moves to exclude the following areas of testimony by Mr. Gallagher:

(1)    Testimony on exhaust gas temperature and oil consumption, which is based solely on what Kapa Investment's President, Mr. Pahlavan, told Mr. Gallagher (Gallagher Report, Section (i)(E), paras. 2 and 4);

(2)    Testimony not based on any scientific or technical evidence or data;

(3)    Testimony about the engine running hot (Gallagher Report, Section (i)(E), para. 5), since Mr. Gallagher admits in his report that he has not been able to investigate this claim and so "cannot yet express an opinion on the item"; and

---

[1] The majority of the alleged problems with the aircraft have nothing to do with the engine but rather deal with the airframe or other component parts of the aircraft.

1    (4)    Any testimony by Mr. Gallagher on matters not specified in his expert

2    report, including any testimony pertaining to the value of the engine since that is

3    not identified anywhere in his report.

4    The opinions expressed by Mr. Gallagher in his report pertaining to TCM do

5    nothing more than transmit unadorned hearsay testimony without applying any

6    reliable scientific or technical methodology.  Mr. Gallagher's opinions fail to

7    comply with Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579

8    (1993).  Accordingly, the Court should grant this motion and exclude all opinions

9    expressed by Mr. Gallagher pertaining to TCM as set forth herein.

10    **II.**

11    **LEGAL STANDARDS**

12    Under Rule 702 of the Federal Rule of Evidence, the court may admit

13    testimony on "scientific, technical, or other specialized knowledge" by a qualified

14    expert witness, if such testimony will "assist the trier of fact to understand the

15    evidence or to determine a fact in issue" and the following three conditions are met:

16    (1) the testimony is based upon sufficient facts or data,

17    (2) the testimony is the product of reliable principles and methods, and

18    (3) the witness has applied the principles and methods reliably to the

19    facts of the case.

20    Fed. R. Evid. 702.

21    Rule 703 sets forth the requirements for what sort of information an expert

22    witness may rely on:

23    The facts or data in the particular case upon which an expert bases an

24    opinion or inference may be those perceived by or made known to the

25    expert at or before the hearing.  If of a type reasonably relied upon by

26    experts in the particular field in forming opinions or inferences upon

27    the subject, the facts or data need not be admissible in evidence in

28    order for the opinion or inference to be admitted.

1    Fed. R. Evid 703.

2        To be admissible, expert testimony must be "not only relevant, but reliable."

3    *Daubert*, 509 U.S. at 589. "The trial court must act as a 'gatekeeper' to exclude

4    'junk science' that does not meet Rule 702's reliability standards by making a

5    preliminary determination that the expert's testimony is reliable." *Mukhtar v. Cal.*

6    *State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002) (*citing Kumho Tire Co. v.*

7    *Carmichael*, 526 U.S. 137, 147-48 (1999)).

8        The "central concern" of Rule 702 is whether the proffered expert testimony

9    is helpful to the jury.  *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993);

10    *see also Daubert*, 509 U.S. at 591. To be admissible, "expert testimony must . . .

11    address an issue beyond the common knowledge of the average layman." *United*

12    *States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150

13    (9th Cir. 2001); *see also United States v. Morales*, 108 F.3d 1031, 1039 (9th Cir.

14    1997) (en banc) (same); *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir.

15    2002) (same). "Maintaining *Daubert*'s standards is particularly important

16    considering the aura of authority experts often exude, which can lead juries to give

17    more weight to their testimony." *Mukhtar*, 299 F.3d at 1063-64.

18        An inquiry under Rule 702 must be "flexible," *Daubert*, 509 U.S. at 594, and

19    "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150 (internal

20    quotation marks omitted). As the proponent of the proffered expert testimony,

21    Plaintiff bears the burden of showing its reliability and admissibility. *United States*

22    *v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

23                                   **III.**

24              **PROPOSED TESTIMONY BY PLAINTIFF'S EXPERT**

25        In his report, Mr. Gallagher offers what he describes as a "[s]tatement of

26    opinions I will express and the basis and reasons for them."  Gallagher Report at 1.

27    The basis of much of his opinion testimony—especially with regard to TCM—is

28    nothing more than conversations with Mr. Pahlavan.  Mr. Gallagher admits that

- 3 -

1  "[i]n some instances, I have relied on what Mr. Pahlavan has reported to me as to
2  what occurs intermittently during flight," since "Mr. Pahlavan is an experienced
3  pilot and I have relied on his statements as being true and correct in reaching some
4  of my conclusions." *Id.* The report suggests that for a particular opinion where Mr.
5  Gallagher relied on Mr. Pahlavan, that was the sole basis for the opinion, in lieu of
6  having "observed the problems myself." *Id.*

7      In general, Mr. Gallagher expresses his opinion that certain "items of
8  equipment manufactured by Teledyne . . . have unrepaired malfunctions that
9  substantially impact the value of the airplane although they have been subject to
10  prior repair." *Id.* at 2.  He goes on to make four specific points with respect to
11  TCM.

12      First, Mr. Gallagher determined that, solely on the basis of conversation with
13  Mr. Pahlavan, the exhaust gas temperature in two engine cylinders "runs 100
14  degrees higher" than in the other four: "In my opinion, this has led to excess engine
15  wear." Gallagher Report at 2-3.  Mr. Gallagher does not give any more precise
16  details about the temperature besides relating the round number of 100 degrees, nor
17  does he define or explain the vague term "excess engine wear."  He does not
18  specify which engine components were supposedly excessively worn.  In fact, since
19  he admits to relying solely on Mr. Pahlavan's reports to him, there is not a scintilla
20  of evidence that Mr. Gallagher has independently verified that two cylinders are in
21  fact running hotter than others or verified excessive engine wear.

22      Moreover, although Mr. Gallagher implies that the two cylinders always run
23  hotter, he later qualifies this assertion by relating Mr. Pahlavan's "continual
24  complaints" that the higher temperatures are "particularly noticeable during hot
25  weather conditions."  Gallagher Report at 3.  This suggests that, even according to
26  Mr. Pahlavan and Mr. Gallagher, there is significant variation in the (alleged)
27  cylinder temperatures from season to season, but there is no indication that Mr.
28  Gallagher has any idea what the parameters of that alleged variation may be.

- 4 -

1    Second, again "[a]ccording to Mr. Pahlavan," Mr. Gallagher reported that

2    "the airplane consumes a quart of oil in three or less hours of flying. This is

3    excessive according to TCM's own standards and is documented" in some of the

4    documents relied on by Mr. Gallagher listed at the end of the report (presumably

5    what he calls "Teledyne oil consumption documents (Exhibits 26 and 27 to Mr.

6    Pahlavan's second deposition.)" Gallagher Report at 3, 4. Mr. Gallagher does not

7    justify his use of the term "excessive" or explain how this allegedly excessive oil

8    use is "documented" at all, other than to simply state so in a conclusory way.

9    Furthermore, there is once again no evidence whatsoever that Mr. Gallagher did

10   anything to independently determine the amount of oil consumption.

11   Third, Mr. Gallagher offers his personal observation of a supposed "'blow

12   off' of oil escaping from the crankcase breather tube and blowing on and staining

13   the lower fuselage." Gallagher Report at 3. Mr. Gallagher's opinion on this

14   phenomenon is that it "is not normal," without any further explanation or

15   qualification. He does not include any pictures or diagrams showing, for sake of

16   comparison, what normal oil staining would look like, as compared to the

17   supposedly abnormal condition of Plaintiff's aircraft. He does not say what his

18   knowledge or experience is with Cirrus SR22 aircraft or other piston engine aircraft

19   with similar crankcase breather systems, which typically deposit oil on the aircraft

20   belly.

21   Fourth, Mr. Gallagher relates "continual complaints" from Mr. Pahlavan

22   "that the engine runs hot," which "[a]ccording to him . . . is particularly noticeable

23   during hot weather conditions." Gallagher Report at 3. This lawsuit was filed in

24   November 2008. Mr. Gallagher found the time to inspect the aircraft "with my

25   client, and later attended the two defense inspections" as well. Gallagher Report at

26   1. In addition, he "spoke many times to Kambiz Pahlavan about his experiences

27   with the airplane." *Id.* Nonetheless, Mr. Gallagher admits that "I have not been

28   able to fly the airplane during hot weather to date, so I cannot express an opinion on

- 5 -

1  this item." *Id.* at 3.  It is ridiculous to believe that if Mr. Gallagher had wanted to fly

2  the aircraft in "hot weather" to test and document whether the aircraft's engine

3  actually runs hot that he could not have found a day to do so over the past ten

4  months.

5                                     **IV.**

6                                 **ARGUMENT**

7  A.    **The Court Should Exclude All Opinion Testimony From**

8         **Plaintiff's Expert On Exhaust Gas Temperatures And Oil**

9         **Consumption Because These Opinions Are Based Solely On What**

10        **Kambiz Pahlavan Told Plaintiff's Expert**

11         This Court should exclude any opinion testimony from Mr. Gallagher that

12 relies on Mr. Pahlavan's reports for its basis—in particular, Mr. Gallagher's

13 remarks on exhaust gas temperature, two engine cylinders running hot, excess

14 engine wear and oil consumption.  Allowing such testimony would turn Mr.

15 Gallagher into nothing more than a conduit for Mr. Pahlavan's testimony without

16 adding any material of value deriving from any expertise in the field.  The result

17 would be to give Mr. Pahlavan's testimony an improper veneer of credibility

18 because it would be filtered through an expert, thus inducing the jury to place

19 improper weight on the remarks, which (as delivered via Mr. Gallagher) are

20 hearsay.  *See* Fed. R. Evid. 801, 802.

21         The Federal Rules of Evidence and Federal Rules of Civil Procedure do not

22 allow testimony to be admitted simply because it is introduced under an expert's

23 imprimatur.  *See United States v. Hall*, 969 F.2d 1102, 1109 (D.C. Cir. 1992) ("The

24 overriding limitation on expert testimony is the requirement that . . . opinions must

25 be helpful to the trier of fact.") (internal quotation marks omitted); *Knight v. Kirby*

26 *Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) ("[T]he expert's testimony

27 must be reliable at each and every step or else it is inadmissible.").

28

1    The paragraphs in Mr. Gallager's report on exhaust gas temperature, excess

2  engine wear, two engine cylinders running hot, Gallagher Report at 2-3, and oil

3  consumption, *id.* at 3, are entirely conclusory and do nothing more than transmit

4  Mr. Pahlavan's own opinions and observations—as hearsay—without applying any

5  "principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

6    Under Rule 703, hearsay is permitted as a basis for the expert's formulation

7  of an opinion—provided the requirements of Rule 702 are met—but the evidence is

8  not admissible for the truth of the matters asserted.  But in the absence of those

9  requirements, a party cannot use an expert as a conduit for dumping a mass of

10  hearsay before the jury. "The law is clear . . . that an expert report cannot be used to

11  prove the existence of facts set forth therein."  *7-Up Bottling Co. of Jasper Inc. v.*

12  *Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1102 (9th

13  Cir. 1999); *see also Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d

14  794, 808 (N.D. Ill. 2005) ("[W]hile Rule 703 was intended to liberalize the rules

15  relating to expert testimony, it was not intended to abolish the hearsay rule and to

16  allow a witness, under the guise of giving expert testimony, to in effect become the

17  mouthpiece of the witnesses on whose statements or opinions the expert purports to

18  base his opinion.").  Rule 703 "is not an open door to all inadmissible evidence

19  disguised as expert opinion." *United States v. Scrima*, 819 F.2d 996, 1002 (11th

20  Cir. 1987).  As the Second Circuit has stressed, instead of simply transmitting

21  hearsay to the jury, "the expert must form his own opinions by applying his

22  extensive experience and a reliable methodology to the inadmissible materials.

23  Otherwise, the expert is simply repeating hearsay evidence without applying any

24  expertise whatsoever, a practice that allows [the proffering party] to circumvent the

25  rules prohibiting hearsay." *United States v. Mejia*, 545 F.3d 179, 197 (2nd Cir.

26  2008) (internal quotation marks omitted).  Allowing Mr. Gallagher's testimony on

27  these matters would effectively transform Mr. Pahlavan's inadmissible hearsay

28  statements into admitted expert testimony but without meeting any of the

- 7 -

1  substantive requirements of Rules 702 and 703—namely, that the opinion is

2  ultimately the product of applying reliable scientific principles and methods.

3      An expert is not supposed to function as an advocate or mere mouthpiece for

4  a party. "[T]he necessity of having the expert testify is driven by the need to have

5  the benefit of his specialized expertise. Central to that equation is the presumed

6  objectivity of the expert . . . ." *Hall v. CIA*, 538 F. Supp. 2d 64, 73 (D.D.C. 2008)

7  (Mag. J.) (refusing to "permit advocacy to wear the clothes of objective scientific

8  analysis."). But that is precisely what Mr. Gallagher's testimony would accomplish

9  here. If Mr. Pahlavan wants to testify about his own impressions and

10  determinations, he may do so as is appropriate and permissible. *See* Rule 602

11  (requiring "personal knowledge of the matter" as basis for a witness's testimony);

12  Rule 701 (limiting opinion testimony by lay witness "to those opinions or

13  inferences which are (a) rationally based on the perception of the witness, and (b)

14  helpful to a clear understanding of the witness' testimony or the determination of a

15  fact in issue, and (c) not based on scientific, technical, or other specialized

16  knowledge within the scope of Rule 702."). But filtering Mr. Pahlavan's

17  impressions through Mr. Gallagher is giving a party an improper platform from

18  which to present his personal testimony to the jury. "Maintaining *Daubert*'s

19  standards is particularly important considering the aura of authority experts often

20  exude, which can lead juries to give more weight to their testimony." *Mukhtar*, 299

21  F.3d at 1063-64.

22      This would not aid in any way the jury's factfinding—which should be the

23  goal of expert testimony. *See Rahm*, 993 F.2d at 1413 (Rule 702's "central

24  concern" is whether the proffered expert testimony is helpful to the jury). Indeed, it

25  is not clear what value Mr. Gallagher's testimony, as expressed in his report, could

26  possibly have for the jury, given its vague and conclusory opinions. "[E]xpert

27  testimony must . . . address an issue beyond the common knowledge of the average

28  layman." *Vallejo*, 237 F.3d at 1019. Yet all Mr. Gallagher has to say is that there

- 8 -

1  was some "excess engine wear" and that oil consumption was "excessive."

2  Gallagher Report at 3.  But Mr. Gallagher provides nothing to support these

3  opinions.  He provides no explanation as to what these terms mean, he fails to

4  quantify or describe the "excess engine wear" or "oil consumption" to which he

5  refers, he fails to support his opinions with any data demonstrating the engine wear

6  or oil consumption, and he fails (assuming these conditions actually exist) to

7  explain the significance of excessive wear or oil consumption with respect to the

8  operation, condition, or life of the engine.  *See* Gallagher Report at 3.

9         For these reasons, the Court should grant TCM's motion and exclude any

10  testimony by Mr. Gallagher regarding exhaust gas temperature and oil

11  consumption.

12     **B.    The Court Should Exclude All Opinion Testimony From**

13            **Plaintiff's Expert Not Based On Scientific or Technical Evidence**

14            **Or Data**

15         In addition, Mr. Gallagher's opinions—including his opinion on oil "blow

16  off"—should be excluded because they are not based on any scientific or technical

17  evidence.  Such a basis is an elementary requirement for the admission of expert

18  testimony.  "The trial court must act as a 'gatekeeper' to exclude 'junk science' that

19  does not meet Rule 702's reliability standards by making a preliminary

20  determination that the expert's testimony is reliable." *Mukhtar*, 299 F.3d at 1063.

21         In this case, however, Mr. Gallagher's opinions have no basis in reliable

22  scientific or technical observations.  As explained earlier, Mr. Gallagher's use of

23  Mr. Pahlavan's say-so cannot satisfy the requirements of Rule 702 and 703.

24  However, even in the instance where Mr. Gallagher is purportedly basing his

25  opinion in part on personal observation, there is no accurate and reliable basis for

26  him to express an opinion.  Mr. Gallagher merely reports that "[t]here is a 'blow

27  off' of oil escaping from the crankcase breather tube and blowing on and staining

28  the lower fuselage," Gallagher Report at 3, without giving any quantitative or

- 9 -

1   qualitative assessment of the "blow off."  How wide was it?  How far back did it

2   reach?  How much oil was present?  Did the oil appear aged or new?  How did the

3   "blow off" compare to other Cirrus SR22 aircraft or other piston engine aircraft

4   with similar crankcase breather systems, and how many such aircraft has Mr.

5   Gallagher inspected in such a fashion?  Mr. Gallagher provides no clue to these

6   most basic questions.  And not surprisingly, given the cursory nature of Mr.

7   Gallagher's reported observations, his final opinion is similarly meager: "This is

8   not normal."

9           This Court should exclude Mr. Gallagher from presenting such

10  underinformed and underanalyzed—and, therefore, inadmissible—opinions to the

11  jury.  Its role as "gatekeeper" demands no less.  *See In re James Wilson Assocs.*,

12  965 F.2d 160, 173 (7th Cir. 1992) (Posner, J.) ("[T]he judge must make sure that

13  the expert isn't being used as a vehicle for circumventing the rules of evidence. . . .

14  If for example the expert witness (call him A) bases his opinion in part on a fact

15  (call it X) that the party's lawyer told him, the lawyer cannot in closing argument

16  tell the jury, 'See, we proved X through our expert witness, A.'"); *Torres v.*

17  *Johnson Lines*, 932 F.2d 748, 751 (9th Cir. 1991) (affirming exclusion of expert

18  testimony where record did not reveal "any specific evidence that was so technical

19  or complex that a jury could not have grasped it without the aid of experts").

20      **C.    The Court Should Exclude All Opinion Testimony From**

21              **Plaintiff's Expert On The Engine Running Hot Because Plaintiff's**

22              **Expert Admits He Has Not Investigated This Claim And**

23              **Cannot Express An Opinion On It**

24          The Court should also exclude any testimony by Mr. Gallagher on whether

25  the aircraft's "engine runs hot."  Gallagher Report at 3.  Mr. Gallagher admits that

26  he personally has no perceptions or evidence directly relating to this allegation

27  other than "continual complaints" he has heard from Mr. Pahlavan.  *Id.*  Indeed, Mr.

28  Gallagher candidly admits that "I have not been able to fly the airplane during hot

- 10 -

1    weather to date, so I cannot express an opinion on this item." *Id.*  Any attempt by

2    Mr. Gallagher to offer opinion testimony on the issue of the engine running hot (or

3    any other opinion testimony that was not timely disclosed in his report) is untimely,

4    inadmissible and unfairly prejudicial to TCM.[2]

5         Expert reports must be "detailed and complete." Fed. R. Civ. P. 26 advisory

6    committee's note; *see* Fed. R. Civ. P. 26(a)(B)(2) (Expert "report must contain . . . a

7    complete statement of all opinions the witness will express"). Rule 26(a)(2)

8    "imposes an additional duty to disclose information regarding expert testimony

9    sufficiently in advance of trial that opposing parties have a reasonable opportunity

10   to prepare for effective cross examination and perhaps arrange for expert testimony

11   from other witnesses." Fed. R. Civ. P. 26 advisory committee's note.  The purpose

12   of the rule is to eliminate "unfair surprise to the opposing party." *Sylla-Sawdon v.*

13   *Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)

14        If a party fails to disclose the information required by Rule 26(a), its expert

15   may not testify as to that information "unless such failure is harmless."  Fed. R.

16   Civ. P. 37(c)(1); *see Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

17   1107 (9th Cir. 2001) (affirming exclusion of expert testimony where untimely

18   disclosure of expert report—"one month before they were to litigate a complex

19   case"—would have unfairly prejudiced the defendant); *Dos Amigos Distribs., Inc.*

20   *v. Cadbury Bebidas, S.A. de C.V.*, No. 05-151, 2008 WL 3844062, at *4 (S.D. Cal.

21   Aug. 14, 2008) (Affirming exclusion of supplemental report disclosed two weeks

22   before final pretrial conference: "Exclusion is an appropriate remedy for failing to

23   fulfill the disclosure requirements even though the litigant never violated an explicit

24   court order to produce the supplemental report and even absent a showing in the

---

[2] In general, the time to disclose expert testimony is "at least 90 days before the date set for trial."
Fed. R. Civ. P. 26(a)(2)(C)(i).  In this case, the deadline to disclose expert testimony was July 29,
2009.  If expert "evidence is intended solely to contradict or rebut evidence on the same subject
matter identified by another party under Rule 26(a)(2)(B), [the disclosure must be made] within
30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(C)(ii).  Here, the deadline to
disclose rebuttal reports was August 28, 2009.  Mr. Gallagher did not disclose a rebuttal report.

1    record of bad faith or willfulness.").  In this case, too, the Court should exclude all

2    such testimony by Mr. Gallagher that has not been based on his independent

3    observations as disclosed before the expert disclosure deadlines.

4        Mr. Gallagher states in his report that he "will supplement this report if

5    further opinions are reached."  Gallagher Report at 3.  The Court should preclude

6    him from doing so at this stage in the case.  "The purpose of rebuttal and

7    supplementary disclosures is just that—to rebut and to supplement. These

8    disclosures are not intended to provide an extension of the deadline by which a

9    party must deliver the lion's share of its expert information."  *Sierra Club v. Cedar*

10   *Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (affirming exclusion of

11   supplemental reports, where initial reports were "sketchy and vague") (quoting Fed.

12   R. Civ. P. 26 advisory committee's note); *Salgado ex rel. Salgado v. General*

13   *Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("Expert reports must not be

14   sketchy, vague or preliminary in nature. Disclosures must not be used as a means to

15   extend a discovery deadline.") (citations omitted).

16       Plaintiff and Mr. Gallagher have had ample time to develop expert testimony

17   on the issues in this case.  The lawsuit was filed in November 2008, and Mr.

18   Gallagher has conducted multiple inspections of the aircraft, both with Plaintiff and

19   in two defense inspections.  Gallagher Report at 1.  Any further changes to Mr.

20   Gallagher's testimony at this stage in the case based on such extensive and involved

21   procedures as taking the aircraft for test flights or conducting engine test runs

22   would be untimely and unfairly prejudicial to TCM's ability to present its defense.

23       **D.    The Court Should Exclude All Opinion Testimony From**

24           **Plaintiff's Expert That Was Not Specified In His Expert Report,**

25           **Including Any Testimony Pertaining To Damages**

26       Finally, the Court should preclude any testimony from Mr. Gallagher on the

27   value of aircraft engines and, accordingly, any damages that were allegedly suffered

28   by Plaintiff as a result of conduct by or attributed to TCM.  Mr. Gallagher has not

- 12 -

1   offered any substantive testimony on this point besides briefly stating in his report

2   that some "items of equipment manufactured by Teledyne Continental Motors

3   which are installed in the airplane have unrepaired malfunctions that substantially

4   impact the value of the airplane." Gallagher Report at 2.

5       To the extent that Plaintiff attempts to elicit an opinion from Mr. Gallagher

6   on potential damages, that opinion should be excluded for two main reasons: (1)

7   Mr. Gallagher has not provided any basis for a reliable opinion on such damages;

8   and (2) the relevant measure of damages for TCM would pertain to the value of the

9   aircraft's engine, not "the value of the airplane" as a whole referred to by Mr.

10  Gallagher.

11      In *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 299 F. Supp. 2d 400 (D.N.J.

12  2003), the plaintiff sought to introduce expert testimony from a consulting engineer

13  on the questions of damages. *See id.* at 405. Although the report was "peppered

14  with technical descriptions of the underlying project disputes," the conclusions on

15  damages were essentially "an itemization" without any "methodology for McCue's

16  assessment of damages except his own view of the merits." *Id.* at 405, 406. As a

17  result, "[t]he Court, and the jury, is left with nothing more than [the expert's]

18  subjective belief," and the court excluded the damages testimony as unreliable. *Id.*

19  Here, too, any testimony by Mr. Gallagher on damages would be improper opinion

20  by a purported technical expert on an unrelated question of damages. *See General*

21  *Electric Co. v. Joiner*, 522 U.S. 136, 145-46 (1997) ("[N]othing in either *Daubert*

22  or the Federal Rules of Evidence requires a district court to admit opinion evidence

23  that is connected to existing data only by the *ipse dixit* of the expert.").

24      Nor can Mr. Gallagher leverage any general technical expertise in airplanes

25  to entitle him to make pronouncements on the subject of damages in this case. An

26  expert cannot simply rely on general principles and knowledge without specifying

27  and justifying the specific methodology used, as well as the evidence serving as a

28  basis: "[I]t seems exactly backwards that experts who purport to rely on general

- 13 -

engineering principles and practical experience might escape screening by the

district court simply by stating that their conclusions were not reached by any

particular method or technique. The moral of this approach would be, the less

factual support for an expert's opinion, the better." *Watkins v. Telsmith, Inc.*, 121

F.3d 984, 991 (5th Cir. 1997); *see also Lyman v. St. Jude Med. S.C., Inc.*, 580 F.

Supp. 2d 719, 726 (E.D. Wis. 2008) (excluding expert testimony on damages where

expert "should have independently verified the reliability of the data . . . , as

opposed to accepting it at the word of [plaintiff's] counsel"); *Montgomery County*

*v. Microvote Corp.*, 320 F.3d 440, 448-49 (3d Cir. 2003) (underlying data was

unreliable where expert did not base his opinion on primary data, did not know

what the document was, who created it, or how it was created); *Crowley v. Chait*,

322 F. Supp. 2d 530, 546-47 (D.N.J. 2004) (where expert relied on summaries

prepared by counsel and conducted little independent investigation, "to allow him

to offer testimony to a jury as to conclusions he has reached on the basis of this

highly filtered version of events, is unacceptable").  Accordingly, the Court should

preclude any opinion testimony from Mr. Gallagher that was not specified in his

expert report, including any testimony pertaining to damages.

## IV.

## CONCLUSION

The opinions of Plaintiff's sole expert witness are a mishmash of hearsay

untouched by any reliable scientific analysis and improper conclusory assertions.

Accordingly, the Court should grant TCM's motion and exclude any opinion

testimony by Mr. Gallagher pertaining to TCM as addressed herein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  September 24, 2009

DEFOREST KOSCELNIK YOKITIS
KAPLAN & BERARDINELLI

By:_____
          Will S. Skinner

Attorneys for Defendant
TELEDYNE CONTINENTAL
MOTORS, INC.

1

# PROOF OF PERSONAL SERVICE

2

3    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4          I am employed in the aforesaid county, State of California; I am over the age of 18 years
and not a party to the within action; my business address is **6303 Owensmouth Avenue, 10th**
5    **Floor, Woodland Hills, California 91367**.

6          On September 24, 2009, I served the **NOTICE OF MOTION AND MOTION IN
LIMINE BY TELEDYNE CONTINENTAL MOTORS, INC. TO EXCLUDE**
7    **PLAINTIFF'S EXPERT TESTIMONY UNDER RULE 702 AND *DAUBERT*;**
**MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action
8    by placing the true copy/original thereof by hand to the addressee hereinbelow described:

9                            Alan R. Golden, Esq.
                          6303 Owensmouth Avenue, 10th Floor
10                         Woodland Hills, California 91367
                            **Attorney For Plaintiff**
11                          **Kapa Investment**

12

13    ☐ **(STATE)**          I declare under penalty of perjury under the laws of the State of
                             California that the foregoing is true and correct.

14    ☒ **(FEDERAL)**        I declare under penalty of perjury that the foregoing is true and
15                           correct.

16          Executed on September 24, 2009, at Woodland Hills, California.

17

18

19

20

21    By:_____
                            Will S. Skinner

22

23

24

25

26

27

28

# PROOF OF SERVICE BY ELECTRONIC MAIL

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **6303 Owensmouth Avenue, 10th Floor, Woodland Hills, California 91367**.

On September 24, 2009, I served the **NOTICE OF MOTION AND MOTION IN LIMINE BY TELEDYNE CONTINENTAL MOTORS, INC. TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY UNDER RULE 702 AND** *DAUBERT*; **MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by transmitting a true copy of said document by electronic mail (skinner@dkykb.com) as follows:

### *SEE ATTACHED SERVICE LIST.*

I am readily familiar with the business practice of my place of employment's practice for transmission by electronic mailing. Under that practice it would be electronically mailed on that same day in the ordinary course of business.

☐ **(STATE)**   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 24, 2009, at Woodland Hills, California.

By:_____
          Will S. Skinner

1

<u>**SERVICE LIST**</u>

2

***Kapa Investment v. Cirrus Design Corporation, et al. (Case No. CV08-08446 PSG (JCx))***

3

4

Alan R. Golden, Esq.
6303 Owensmouth Avenue, 10th Floor
Woodland Hills, California 91367

*Telephone*:  (818) 784-1224

*Facsimile*:  (818) 936-3011

*Email*:        alangolden@earthlink.net

Attorneys for Plaintiff
**KAPA INVESTMENT**

5

6

7

Peter Cook, Esq.
Schumann Rallo & Rosenberg LLP
3100 Bristol Street, Suite 400
Costa Mesa, CA 92626

*Telephone*:  (714) 850-0210

*Facsimile*:  (714) 850-0551

*Email*:        pcook@srrlawfirm.com

Attorneys for Defendant
**CIRRUS DESIGN CORPORATION**

8

9

10

11

12

Benjamin Klein, Esq.
Shlansky & Co., LLP
1762 Massachusetts Avenue
Lexington, MA  02420

*Telephone*:  (510) 465-7100

*Facsimile*:  *(*510) 465-8556

*Email*:        bhk@shlanskylaw.com

Attorneys for Defendant
**S-TEC, INC.**

13

14

15

16

Scott Ferrell, Esq.
Scot D Wilson, Esq.
Call, Jensen & Ferrell
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660

*Telephone*:  (949) 717-3000

*Facsimile*:  (949) 717-3100

*Email*:      sferrell@calljensen.com

*Email*:        swilson@calljensen.com

Attorneys for Defendant
**GARMIN INTERNATIONAL, INC.**

17

18

19

20

21

James H.  Broderick, Jr., Esq.
Adrienne R. Salerno, Esq.
Squire, Sanders & Dempsey LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

*Telephone:*  (213) 624-2500

*Facsimile:*  (213) 623-4581

*Email*:        jbroderick@ssd.com

*Email*:        asalerno@ssd.com

Attorneys for Defendant
**L-3 COMMUNICATIONS AVIONICS SYSTEMS, INC.**

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lori A. Winfree, Esq.
Nixon Peabody LLP
555 West Fifth Street, 46th Floor
Los Angeles, CA  90013
*Telephone:*  (213) 629-6000
*Facsimile:*  (213) 629-6001
*Email:*        lwinfree@nixonpeabody.com

Attorneys for Defendant
**AVIDYNE CORPORATION**